Argued July 13, affirmed September 27, 1973

# NATIONAL GENERAL THEATRES, INC.,
## *Respondent, v.* BOLGER, *Appellant.*

514 P2d 344

*Paul R. Duden*, Portland, argued the cause for appellant. On the briefs were Tooze, Kerr & Peterson, Portland.

*John L. Langslet*, Portland, argued the cause for respondent. With him on the brief were Dusenbery, Martin, Bischoff & Templeton, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN,* HOWELL and BRYSON, Justices.

O'CONNELL, C. J.

This is an action by plaintiff landlord to recover damages from its tenant for unpaid rent. The case was tried on stipulated facts, and judgment was entered for plaintiff in the amount of $3,020, plus costs and $750 in attorney fees. Defendant appeals.

Defendant Ray Bolger and plaintiff's predecessors in interest, Ahlnew Amusement Company, entered into a lease agreement on March 30, 1954. Defendant operated a retail men's clothing store on the leased premises. The lease provided for a base rental of $6,000 per

---

* Holman, J., did not participate in this decision.

year, and for a percentage rental of six percent of defendant's gross receipts each year less the amount of the base rental. The agreement also prohibited subletting of the premises without the written consent of the lessor.

There were several renewals of the lease, the last of which was executed on May 16, 1967, and covered a period from September 1, 1967 through August 31, 1972. This extension called for a base rental of $550 per month for the first year and increments of five dollars for each succeeding year. The six percent clause obtained in the same manner as in the original 1954 lease.

For health and business reasons, defendant closed his store at the end of February, 1969. Defendant was committed to Dammasch State Hospital on April 17, 1969, suffering from a mental illness which, according to the stipulation of the parties, rendered him unable to understand the nature, quality and consequences of business transactions.

Prior to his hospital commitment, defendant informed plaintiff's real estate broker that he wanted to be relieved of his lease. The broker found Todd Imports, Inc., which was willing to sublet the premises only if it could pay a flat monthly rental rather than a base rent plus a percentage rental.

Three days after his commitment to Dammasch State Hospital, defendant signed a sublease agreement letting his store premises to Todd. The sublease provided for a flat monthly rent of $650, the payments to be sent directly to plaintiff. In all other respects the sublease contained the same provisions included in the 1967 extension of the 1954 lease. A separate instrument

entitled "Consent," executed only by plaintiff, provided as follows:

"Ahlnew Amusement Corporation [plaintiff's predecessor] hereby approves and agrees to the terms and conditions of the foregoing sublease, and agrees that during the tenancy of Todd Imports, Inc., its successors or assigns, under said sublease, the percentage clause of Ray Bolger's lease of said premises from Ahlnew Amusement Corporation, which provides for a percentage rental payment based on a percentage of sales over and above the fixed monthly rental payments * * * will be waived. In all other respects, said Overlease and the extension thereof shall remain in effect. The consideration for said waiver and consent to sublease is the payment to Ahlnew Amusement Corporation of all the additional monthly rental payments made by Todd Imports, Inc. in excess of the monthly fixed rental payments provided in Ray Bolger's lease with Ahlnew Amusement Corporation throughout the entire term of the foregoing sublease.

"No further sublease nor assignment of either the Overlease or sublease above referred to shall be made without the express prior written consent of Ahlnew Amusement Corporation being had and obtained."

Todd occupied the premises from May 1, 1969 through February 28, 1972. During that period Todd paid $18,600 in rent, consisting of $650 per month from May of 1969 through August of 1971, and $400 in September, 1971. Defendant apparently re-entered on March 1, 1972, and paid to plaintiff its base rent of $570 per month for March, April and May of 1972. Plaintiff filed its complaint on June 20, 1972, contending that defendant owed $570 per month for October, 1971 through February, 1972, plus $170 ($570 less $400 paid by Todd) for September, 1971, or a total of $3,020.

Defendant for his first affirmative answer contended that he lacked the mental capacity to understand the nature of the sublease agreement when he signed it, and that the agreement was therefore "void." The trial court sustained plaintiff's demurrer to this defense, apparently on the basis that plaintiff had only alleged a cause of action on the 1967 extension of the 1954 lease.

For his second affirmative answer defendant alleged that on or about February 28, 1972, he had tendered the amount of $540 to plaintiff. This figure represents the difference between $19,140, the base rent which defendant owed plaintiff for the period from May 1, 1969 through February of 1972, and $18,600, the total rent paid to plaintiff by Todd. Plaintiff's demurrer to this second affirmative answer was overruled. Defendant failed to plead further, whereupon the trial court entered its judgment for plaintiff in the amount of $3,020.

The substance of defendant's argument on appeal is that he is liable to plaintiff only on the overlease, which provides for a base monthly rental plus six percent of gross receipts less the amount of the base rental. Since from May of 1969 through February of 1972 he did not occupy the premises and therefore made no income from which the six percent could be calculated, defendant contends that he is only liable for base rental payments during this period. Defendant argues further that he is entitled to be credited with all payments received by plaintiff from Todd, thus limiting his liability, in the manner previously described, to $540. He finally contends that any assumption that the increased flat monthly rent paid by Todd was in lieu of the base rental plus the six percent provided for

in the overlease must be predicated on the terms of the sublease and consent, and that due to his incompetency when he signed the sublease, it is "void."

If the defendant had been competent to enter into contractual relations, it would seem reasonable to interpret the transaction in question as a consensual arrangement whereby plaintiff's predecessor in title (Ahlnew Amusement Corporation) consented to the sublease and waived the percentage provision in the overlease in consideration for which Ahlnew was to receive an additional rental of eighty dollars per month from Todd, the subtenant. The document entitled "Consent" expressly provided that the consideration for the consent to the sublease and the waiver of the percentage provision was the payment to Ahlnew of the additional monthly rental in excess of the rental provided for in the overlease. This instrument was signed only by the lessor, Ahlnew, but it would seem reasonable to treat the granting of consent as a unilateral transaction when it is apparent from the sublease which provided for the payment of rent to Ahlnew that it was made pursuant to some kind of an agreement between Ahlnew and defendant. Therefore, assuming defendant was competent to contract, we would read the Consent Agreement as if it were a part of the sublease and thus be binding upon defendant.

Although it seems clear enough that this was the nature of the transaction, we are not free to decide the case upon this ground because it is stipulated that defendant was incompetent at the time the sublease and consent were executed. Inasmuch as defendant was incompetent, the transactions described above are voidable. But the rule is that a transaction may be avoided by an incompetent only if the parties can be placed in

status quo ante or, putting it in another way, the incompetent must restore the consideration he has received under the contract he seeks to avoid.[1]

■ As we noted above, the consideration for Ahlnew's consent to the sublease and waiver of the six percent provision was the additional payment of eighty dollars per month by the sublessee to Ahlnew. If defendant were permitted to avoid that part of the transaction consisting of Ahlnew's consent and waiver and at the same time treat Todd's occupancy as giving rise to an obligation to pay $650 monthly rental, plaintiff would be deprived of the consideration for which he bargained. This would violate the principle previously stated.

We conclude that defendant is not entitled to a credit of the amounts received from Todd by plaintiff in excess of the base rental reserved in the 1967 extension of the 1954 lease, and that the trial court was correct in finding defendant liable on the overlease to plaintiff in the amount of $3,020.

■ The overlease agreement provided that if the landlord brings "any suit or action" for rent, it shall also recover reasonable attorney fees. Plaintiff asserts that it is entitled to attorney fees for responding to this appeal by virtue of ORS 20.096.[2] We disagree. As

---

[1] Smiley v. Ackerman, et al, 196 Or 383, 393, 249 P2d 168 (1952).

[2] "20.096 Attorney fees and costs in proceedings to enforce contract. (1) In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and necessary disbursements,

"(2) Attorney fees provided for in a contract described in sub-(Continued on page 591)

this court stated in *McMillan v. Golden,* 262 Or 317, 497 P2d 1166, 1168 (1972), "if a contract provides for attorney fees to either party on trial (or 'in such suit or action' * * *), without reference to the allowance of attorney fees on appeal, we do not believe that the legislature intended to allow attorney fees to either party on appeal * * *."

The judgment of the trial court is affirmed.

---

(Continued from page 590)

section (1) of this section shall not be subject to waiver by the parties to any such contract which is entered into after September 9, 1971. Any provision in such a contract which provides for a waiver of attorney fees is void.

"(3) As used in this section 'prevailing party' means the party in whose favor final judgment or decree is rendered.

"(4) As used in this section 'contract' includes any instrument or document evidencing a debt."